## OREGON R. & NAVIGATION CO. v. DUMAS.

(Circuit Court of Appeals, Ninth Circuit. October 3, 1910.)

### No. 1,812.

1. PLEADING (§ 212*)—DEMURRER—ANSWER TO MERITS.

　　A demurrer to a complaint for want of facts is waived by an answer to the merits.

　　[Ed. Note.—For other cases, see Pleading, Cent. Dig. § 522; Dec. Dig. § 212.*]

2. CARRIERS (§ 69*)—CARRIAGE OF FREIGHT — SPECIAL CONTRACT—BREACH—COMPLAINT.

　　Plaintiff's complaint alleged an agreement whereby defendant was to equip a side track to be laid to plaintiff's orchard, and furnish sufficient refrigerator cars to handle plaintiff's apple crop estimated at about 50 cars, at the rate of six or eight cars per week, as required by plaintiff, in consideration of which plaintiff agreed to ship all his apple crop over defendant's railroad. It also alleged that defendant failed and refused on demand to furnish cars in accordance with the contract, and that, by reason thereof, plaintiff was damaged, etc. Held, that the complaint alleged a contract mutual in its terms, and was not uncertain for failure to specify the time when the cars were to be furnished, it being presumed that the parties made their contract in view

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of the usual custom relative to the transaction with knowledge of the time when, in the ordinary course, the crop would be moved.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 69.*]

**3. APPEAL AND ERROR (§ 169*)—QUESTIONS NOT RAISED AT TRIAL—REVIEW.**

A point asserted in support of an assignment of error will not be reviewed on appeal when it was not presented to the trial court.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 1018; Dec. Dig. § 169.*]

**4. CARRIERS (§ 13*)—CARS—SPECIAL CONTRACT TO FURNISH—VALIDITY.**

A carrier's special contract to furnish a shipper a specified number of cars at specific times and places is not invalid, as contrary to public policy and discriminatory.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 22; Dec. Dig. § 13.*]

**5. CARRIERS (§ 67*)—CONTRACT TO FURNISH CARS—BREACH—DEFENSES.**

Where a carrier contracted to furnish a specified number of cars to move plaintiff's apple crop at specified times and places, the carrier's inability to furnish the cars contracted for owing to unusually heavy traffic at the time the cars were demanded constituted no defense to an action for plaintiff's damages for such failure.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 226; Dec. Dig. § 67.*]

**6. CONTRACTS (§ 108*)—VALIDITY—PUBLIC POLICY.**

A court should declare a contract void as against public policy only when the case is clear and free from doubt, and the injury to the public is substantial, and not theoretical or problematical.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 498; Dec. Dig. § 108.*]

In Error to the Circuit Court of the United States for the Southern Division of the Eastern District of Washington.

Action by J. L. Dumas against the Oregon Railroad & Navigation Company. Judgment for plaintiff, and defendant brings error. Affirmed.

For convenience the parties to this action will be designated as they are in the court below and as in the briefs of counsel in this court. The plaintiff in an action at law to recover damages against the defendant alleged, in substance, that the defendant owned and was in possession of a railroad line leading past the plaintiff's farm in Columbia county, Wash.; that on the plaintiff's farm was a growing crop of apples, which would be ready for shipment and market in the fall of 1907; that it was known to plaintiff and defendant that to ship the crop to market would require about 50 refrigerator cars; that early in September, 1907, plaintiff and defendant entered into a contract, whereby it was agreed that plaintiff would ship all of said crop of apples over the defendant's railroad line, and would grade and prepare the ground for a side track from the defendant's road, and build a warehouse to use in connection therewith, and that the defendant would lay a side track and put in a switch, and furnish at said point upon demand all refrigerator cars required by the plaintiff to handle and ship said apple crop; that the defendant was informed by the plaintiff prior to making said contract that the plaintiff had a contract for the sale and delivery of his crop of apples, and that the amount to be received by him was dependent upon the delivery of said apples in accordance therewith, and the defendant agreed to furnish such cars as plaintiff needed, not less than six, nor more than eight per week; that, when said contract was made, it was known and understood between the parties that the crop was to be shipped for the purpose of being sold according to the plaintiff's contract with a purchaser; that the plaintiff complied with said contract upon his part; but that, when the crop was ready for ship-

ment, the defendant failed and refused on demand to furnish cars in accordance with the contract, and the complaint set forth the facts upon which, it was alleged that, by reason of said breach of the contract on the part of the defendant, the plaintiff's damages were $11,128.20. The defendant answered, admitting that it constructed a spur track from its line of railroad where the same passed through the plaintiff's farm. but denied all the other substantial allegations of the complaint. For a separate defense, it alleged that, after making a careful investigation of the amount of apples to be offered for shipment upon its line of railroad upon the basis of shipments of former years, it made adequate provision for refrigerator cars to handle and accommodate all shipments of apples that could reasonably be anticipated during the season, of 1907, and in the estimate took into consideration the crop of apples referred to by the plaintiff in his complaint, but that during the fall of 1907 an extraordinary and unusual demand for apples was made by dealers in eastern markets, and elsewhere; that the apple crops in Oregon, Washington, and Idaho were much larger than was expected, or could reasonably have been anticipated, and far in excess of those of any previous year; that at the same time there was an extraordinary demand for refrigerator cars for fruit growers in California; that the result was an extraordinary and abnormal condition in respect to the apple crop in the states of Oregon, Washington, and Idaho, and the transportation thereof, and in the fall of 1907, refrigerator cars were demanded by shippers, including the plaintiff, for immediate shipment, and an unusual and unprecedented demand for such cars was made upon the defendant far in excess of its available supply, and in excess of the number that its officers and agents could have reasonably anticipated would be required, and that the defendant exerted itself to its utmost to meet all orders made upon it for cars, apportioning the same equitably and without discrimination or delay, and that the plaintiff at all times received his share and his fair proportion of all the available refrigerator cars; that it was impossible to furnish immediately and at all times to plaintiff and other shippers refrigerator cars for the movement of apples to points in the eastern states as rapidly as required; that the defendant lost control of the use of cars sent to eastern points, and was powerless to secure the return of the same for the further loading of the crop during the season. And the answer charged against the plaintiff delay in preparing his crop for shipment promptly and early in the season as requested by the defendant. The plaintiff's reply denied the allegations of the defendant's defense. Upon these issues, the cause was tried before a jury, and a verdict was returned in favor of the plaintiff for $6,750.

W. W. Cotton, Arthur C. Spencer, Dunphy, Evans & Garrecht, Ralph E. Moody, Lester S. Wilson, and E. M. Barnes, for plaintiff in error.

Sharpstein & Sharpstein, W. H. Fouts, Winn & Burton, J. A. Hellenthal, A. P. Black, George Clark, and W. C. Sharpstein, for defendant in error.

Before GILBERT and ROSS, Circuit Judges, and WOLVERTON, District Judge.

GILBERT, Circuit Judge (after stating the facts as above). The plaintiff in error contends that the complaint is fatally defective for failure to state a cause of action. A demurrer was interposed on this ground, but it was waived by an answer to the merits. In some respects the averments of the complaint are aided by the allegations of the answer. While the complaint is not as specific as the rules of good pleading require, it nevertheless contains all the essentials of a cause of action. It alleges the agreement between the parties whereby the defendant was to equip a side track to be laid to the plaintiff's

orchard, and was to furnish sufficient refrigerator cars to handle the plaintiff's apple crop, estimated to be about 50 cars, to be furnished at the rate of 6 or 8 per week, as required by him. But it is said that the complaint is uncertain, in that it specifies no time at which the cars were to be furnished, and defective, in that it alleges no promise of the plaintiff to ship his crop by the defendant's road. It must be taken for granted, however, that the contracting parties made their agreement in view of the usual custom relative to such a transaction, and that they had knowledge of the time when in the ordinary course the crop would be moved. Nor does the complaint fail to show that the contract was mutually binding. It alleges that it was mutually agreed that the plaintiff would ship all his crop of apples over the defendant's road.

At the close of the testimony, the defendant moved "that the court direct the jury to return a verdict in favor of the defendant," and error is assigned to the order of the court overruling the motion. It would be a sufficient answer to this assignment of error to point to the fact that the ground on which the motion was made does not appear to have been presented to the court below. But, assuming that the ground was that which is now urged in this court, namely, that the testimony was insufficient to show that there was a valid and enforceable contract, we find no error in the denial of the motion. There was evidence that the plaintiff's orchard was within reach of the Northern Pacific Railroad, as well as that of the defendant; that he had entered into negotiations with the Northern Pacific Company for the construction of a spur to handle his crop for the year 1907, when he was approached by agents of the defendant, with whom negotiations were had which culminated in the contract which is sued upon. There was evidence that the defendant refused to construct a side track for the use of plaintiff, except upon the express condition that all of his apple crop be shipped over its road; that said agents and the plaintiff made an estimate of the quantity of the crop, and the number of cars requisite for the shipment of the same; and that the defendant definitely promised to furnish cars sufficient for the prompt handling of the entire crop. It was further shown that the plaintiff exhibited to said agents a written contract whereby he had sold his crop to an eastern purchaser. That contract was admitted in evidence, and it shows that the shipments were to begin between September 10th and 15th, and to end about November 20th, and there was testimony in the record to show that those dates were agreed upon between the parties to the action. There was further evidence to show the failure and refusal of the defendant to furnish cars as agreed upon, and the consequent damages to the plaintiff.

Error is assigned to the exclusion of evidence offered by the defendant to sustain its defense that it made careful investigation of the apple crop likely to be offered for shipment in the year 1907, and made adequate provision for what could reasonably be expected, that the crop was an extraordinary one, far in excess of any previous year, that there was an extraordinary demand for refrigerator cars in California, and that the plaintiff received his share or fair proportion of available

refrigerator cars; and the defendant argues that to have furnished him all the cars contracted for would have been to discriminate unfairly in his favor, and that, therefore, the contract was void and unenforceable as illegal and against public policy. There was no issue made in the court below directly raising the question of the validity of the contract on the ground that it was affected by any principle of public policy. It is true that a discriminatory contract between a quasi public corporation, such as a railroad company, and its patrons, is held to be void because of the resulting unreasonable advantage to one over another, whereas, in fact, all have a moral and legal right to equality of treatment. But it is nevertheless well settled that a carrier may bind itself by contract to furnish a shipper a specific number of cars at specific times and places, and that damages may be recovered by the shipper for the carrier's failure or delay to carry out the contract (6 Cyc. 429; Baxley v. Tallassee & Montgomery R. R. Co., 128 Ala. 183, 29 South. 451; International G. N. R. Co. v. Young [Tex. Civ. App.] 28 S. W. 819; Nichols v. Oregon Short Line R. Co., 24 Utah, 83, 66 Pac. 768, 91 Am. St. Rep. 778; Outland v. Sea Board Air Line Ry. Co., 134 N. C. 350, 46 S. E. 735; Chattanooga Southern R. Co. v. Thompson, 133 Ga. 127, 65 S. E. 285; Midland Valley R. Co. v. Hoffman Coal Co., 91 Ark. 180, 120 S. W. 380; Mathis v. Southern Railway Co., 65 S. C. 271, 43 S. E. 684, 61 L. R. A. 824; Clark v. Ulster & Delaware R. R. Co., 189 N. Y. 93, 81 N. E. 766, 13 L. R. A. [N. S.] 164, 121 Am. St. Rep. 848), and inability of the carrier to furnish the cars contracted for, owing to unusually heavy traffic at the time, is no defense to an action for damages for such failure (Harrison v. Missouri Pacific Railway Co., 74 Mo. 364, 41 Am. Rep. 318; Deming v. Railroad Company, 48 N. H. 455, 2 Am. Rep. 267; Gulf, C. & S. F. Ry. Co. v. Hume, 87 Tex. 211, 27 S. W. 110). The defendant cites cases in support of the proposition that unusual press of business, which could not reasonably be anticipated, and the lack of proper facilities, may furnish an excuse, like any other cause not due to the carrier's fault, for failure to transport goods. But they are all cases in which the right of the shipper to the facilities for transportation depended upon the common-law obligation of the carrier to furnish cars on demand and to carry goods when offered. In none of them was the right of the shipper dependent on an express contract, as in the case at bar. Here was a contract made in the very month in which shipments were to commence, at a time when the defendant had all the means for ascertaining the extent of the crop, which it could acquire at any time. It knew, of course, the extent of its own resources available for carrying out the contract. It solicited the contract, and it interfered with the plaintiff's preparations to ship his crop by another road. It made it a condition of the contract that he should ship his entire crop by its road, and construct no spur to the competing road, thereby shutting off his access to the latter. In the terms of the contract as made, there was nothing illegal, and nothing to contravene public policy. The defendant cites cases which hold that a contract, whereby discriminatory rates are afforded a shipper, is illegal and void. But the principle upon which those cases depend is not applicable here. There was nothing

181 F.—50

discriminatory·in the contract as made. There was nothing in its terms to show that the plaintiff was to receive more than his proportionate share of cars,' or that others would be injured thereby. A court should declare a·contract void as against public policy only when the case is clear and· free from doubt, and the injury to·the public is substantial and not theoretical or problematical. Especially is this so when the question of the application of a rule of public policy is raised for the first time in an appellate court. ·What we have to decide here is whether the court below erred in the decision of any question· which was presented before it, to which exception was taken· and error assigned. The evidence so offered and excluded would have presented no ground for relieving the· defendant from its obligation upon its contract.

The judgment is affirmed.