## HECHT v. ALFARO.

(Circuit Court of Appeals, Ninth Circuit. February 1, 1926.)

No. 4588.

1. **Sales ⊜181(2)—Buyer required to testify whether he made complaint when he ascertained that coffee was not shipped on first available vessel.**

In action for failure to ship coffee from foreign port until two months after agreed time, buyer was properly required to say whether he made complaint to seller, when he found that coffee was not shipped on first available vessel, where seller pleaded waiver.

2. **Sales ⊜181(2)—Evidence that buyer never advised seller that he would not accept coffee because not shipped on time admissible.**

In action for failure to ship coffee from foreign port until two months after agreed date, it was proper to prove that buyer never advised seller, prior to arrival, that he would not accept it because not shipped on time, and that buyer had never notified seller that he was holding coffee for his account.

3. **Sales ⊜181(2)—Testimony that shipping agency had monopoly at shipping port admissible in action for damages because of delay.**

In action for failure to ship coffee from foreign port until two months after agreed date, testimony that shipping agency had monopoly of shipping at port of shipment was properly admitted, where fact was known to both parties.

4. **Sales ⊜181(9)—Competent to prove that seller gave shipping agency instructions to ship coffee on first trip of ship selected by buyer.**

In action for failure to ship coffee from foreign port until two months after agreed date, it was competent for seller to prove that he gave shipping agency at shipping port instructions to ship coffee on ship selected by buyer on its first trip.

5. **Sales ⊜181(9)—Admission of evidence that yellow fever epidemic delayed shipments was not reversible error.**

In action to recover for failure to ship coffee from foreign port until two months after agreed date, it was not reversible error to admit evidence that yellow fever epidemic at place of shipment had some influence in delaying shipments.

6. **Sales ⊜181(2)—Evidence that shipping agency had exclusive charge of carrying out instruction of shippers according to facilities of port, was admissible.**

In action for failure to ship coffee from foreign port until two months after agreed date, evidence that shipping agency had exclusive charge of carrying out instructions of shippers according to facilities at shipping port was competent.

7. **Appeal and error ⊜209(1), 731(5), 733—Assignment of error directed to verdict as unsupported by evidence presents nothing for consideration of appellate court.**

Assignment of error, directed to verdict and judgment as being unsupported by evidence, presents nothing for consideration of appellate court; trial court not having been requested to make a ruling or give instructions.

8. **Appeal and error ⊜169, 242(1)—Circuit Court of Appeals can review only rulings made by trial court on questions brought to its attention and passed on by it.**

Circuit Court of Appeals can review only rulings made by trial court on questions brought to its attention and passed upon by it.

9. **Customs and usages ⊜17—Custom could not overcome expressed direction of buyer to ship goods by named vessel.**

A custom could not overcome an expressed direction of buyer to ship goods by named vessel.

10. **Sales ⊜182(1)—Testimony held to make jury questions as to buyer's duty to specify vessels and whether refusal by vessels constituted breach of contract by seller.**

In action for damages for failure to ship coffee from foreign port on agreed date, testimony *held* sufficient to go to jury on questions whether it was buyer's duty to specify vessels upon which coffee was to be shipped, and whether refusal of vessels designated to carry

coffee constituted breach of contract on part of seller.

In Error to the District Court of the United States for the Southern Division of the Northern District of California; John S. Partridge, Judge.

Action by Daniel Hecht, doing business under the name of D. Hecht & Co. against Antonio Alfaro. Judgment for defendant (4 F.[2d] 255), and plaintiff brings error. Affirmed.

The plaintiff in error was the plaintiff in the court below in an action on a contract with the defendant for the purchase of 120,-000 Spanish pounds of coffee. The complaint alleged that the contract was made about April 14, 1920; that the total purchase price of the coffee was $20,400; that delivery was to have been made by the defendant at the port of Acajutla, republic of Salvador, during the month of May, 1920, for shipment to San Francisco; that the defendant, in violation of the contract, failed to ship the coffee during the month of May, 1920, but shipped the same during the following July; and that by reason of the breach, owing to the decline in the price of coffee, the plaintiff was damaged in the sum of $8,100.

The defendant filed an answer and a cross-complaint. He alleged that the contract was for the purchase of the coffee free alongside steamer at Acajutla, for shipment therefrom on the steamers Rainier and Northland, scheduled to sail from said port during the month of May, 1920; that during the month of April, 1920, he prepared said coffee for shipment, and delivered the same in bags to La Agencia Nacional Limitada, a company which had exclusive control of all wharfage and dockage space at Acajutla, with instructions to ship the same to the plaintiff on the steamers Rainier and Northland; that neither of said steamers accepted any cargo from Acajutla for shipment to San Francisco during the month of May, 1920; that immediately upon being notified of that fact the defendant advised the plaintiff thereof, and informed him that he would arrange for the shipment of said coffee with La Agencia Nacional Limitada upon the first available vessel from Acajutla to San Francisco; that the plaintiff gave no other instructions to the defendant, and the latter thereupon notified La Agencia Nacional Limitada to ship said coffee on the first vessel sailing from Acajutla for San Francisco, and that in accordance with said directions the coffee was shipped during the month of July, 1920, and

10 F.(2d)—30

was delivered to the plaintiff and accepted by him during the first week of August, 1920, and has since been retained by him; that, if there was a breach of the contract on his part, the plaintiff waived it by accepting the coffee and thereafter making payments on account of the purchase price.

The plaintiff, in his answer to the cross-complaint, denied that he accepted the coffee on its arrival in San Francisco, and alleged that he held it for the use of the defendant, and to protect himself for advances made on account of the purchase price. The defendant in his cross-complaint demanded judgment for the sum of $6,374.40, the balance of the unpaid purchase price of said merchandise. Upon the verdict of the jury, judgment was rendered for the defendant in accordance with his demand.

H. U. Brandenstein and R. A. Carter, both of San Francisco, Cal., for plaintiff in error.

Goldman & Altman, of San Francisco, Cal., for defendant in error.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). [1,2] The only rulings of the trial court presented by the bill of exceptions and assignments of error are rulings upon the admission of testimony. The plaintiff in his brief makes but cursory reference to those rulings, and we shall discuss them with like brevity. It was not error to require the plaintiff to say whether he made any complaint to the defendant when he ascertained that the coffee was not shipped on the first available vessel. That evidence was pertinent to the defendant's plea that the plaintiff had waived shipment in May. For like reason it was not error to prove that the plaintiff never advised the defendant prior to the arrival of the coffee in San Francisco, that he would not accept it because it was not shipped in May, or to prove that the plaintiff never notified the defendant that he was holding the coffee for his account, or that he never advised him that he had resold the coffee.

[3-6] It was proper to admit testimony to show that La Agencia Nacional Limitada had the monopoly of the shipping at the port of Acajutla. That was a fact known to both parties to the action long before the contract was entered into. It was clearly competent for the defendant to prove through an officer of La Agencia that on April 27, 1920, he gave the agency instruction to ship the coffee on the Rainier on its first trip north. Nor

was it reversible error to admit evidence that a yellow fever epidemic at that time had some influence in delaying shipments at Acajutla, for the reason that steamers did not call as regularly as was customary. And it was clearly competent to offer evidence that the agency at Acajutla had exclusive charge of carrying out the instructions of shippers according to the facilities at the port.

[7, 8] The plaintiff asserts that the sole issue upon the trial in the court below was as to whose duty it was to secure the transportation of the coffee. He presents for the consideration in this court assignments of error directed to the verdict and the judgment, which he contends are erroneous, in that they are wholly unsupported by any evidence of the defendant's performance of the contract, and he contends that under the evidence the obligation to furnish transportation and to furnish it during the month of May, 1920, rested upon the defendant. Such assignments present nothing for the consideration of an appellate court. They bring up for review no ruling of the trial court. They do not show that at any point in the proceedings the court below committed error. Upon no question thus presented does it appear that the trial court was requested to make a ruling or give an instruction to the jury. This court has no authority to retry an action at law and render such judgment as we may think should have been rendered. We can review only rulings made by the trial court on questions brought to its attention and passed upon by it. Oregon R. & Nav. Co. v. Dumas, 181 F. 781, 104 C. C. A. 641; Bort v. E. H. McCutchen & Co., 187 F. 798, 109 C. C. A. 558; United States v. National City Bank (C. C. A.) 281 F. 754. These considerations are sufficient to dispose of the case upon the writ of error from this court.

[9, 10] In view, however, of the insistence of the plaintiff that there was no evidence whatever to sustain the defense and cross-complaint of the defendant, we have given sufficient examination of the evidence to see that the contention is not well founded. The terms of the contract were expressed in telegrams, the last of which, of date April 15, 1920, conveyed the instruction of the plaintiff to the defendant to "ship steamers Rainier Northland." The plaintiff contends that the terms of that telegram were modified by his letter to the defendant of April 17, 1920, in which he wrote: "If it is possible to ship on the steamers Rainier and Northland, it is preferable." There was evidence that, immediately on receipt of the telegram of April

15, the defendant prepared the coffee for shipment, and during that month delivered it to La Agencia Nacional Limitada at the port of Acajutla, with instruction to ship on the steamers Rainier and Northland during the month of May, and that on April 27 he wrote to the plaintiff: "The shipments will be made, as far as is possible, on the steamers Rainier and Northland, according to your wishes stated."

There was evidence that La Agencia Nacional Limitada had exclusive control of all shipments from Acajutla; that the steamer Northland did not call at that port during the month of May; that, while the Rainier called there during that month, her master did not deem it advisable to wait a sufficient time to take on the coffee; and that as soon as the defendant was advised of that fact he cabled to the plaintiff that the Rainier did not take the cargo, but that he would ship it on the first available steamer. To this no objection was made by the plaintiff. There was evidence that the coffee was shipped upon the first available vessel, and that upon its arrival in San Francisco the plaintiff took possession thereof and held it for a period of five or six months before he sold it, and that at different periods from July 30, 1920, to August 8, 1920, he made payments to the defendant on account of the purchase price.

For the plaintiff testimony was introduced on the question whether by the custom existing at the port of Acajutla it was the duty of the buyer or the seller under f. o. b. contracts to specify the vessel upon which the shipment was to be made. A custom, however, could not have the effect to overcome an express direction of the buyer to ship goods by a named vessel, and there was testimony for the defendant to the effect that the term "f. o. b.," when used in connection with shipments from Acajutla to San Francisco, implied that the buyer was to furnish the transportation, and there was testimony sufficient to go to the jury to show that it was the plaintiff's duty in the present case to specify the vessels upon which the coffee was to be shipped, and that the refusal of the vessels which he named to carry the coffee constituted no breach of the contract on the defendant's part. In confirmation of the defendant's construction of the contract is the plaintiff's own testimony that he instructed the purser of the steamer Northland to "get that coffee and get it up here quick."

In brief, without attempting to weigh the evidence, we find it sufficient to go to the jury as tending to establish the essential al-

legations of the defendant's defense and cross-complaint, and to show that he committed no breach of the contract.

The judgment is affirmed.